THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THE ESTATE OF LYLE ELLIOTT, and through its Special Administrator, MARY ELLIOTT, and MARY ELLIOTT, TIA COLLINS, LARZ ELLIOTT, TAMIKA ELLIOTT, and KADEN ELLIOTT, heirs at law of Lyle Elliott, | ) ) ) ) ) ) ) ) ) | 4:04CV3343 **MEMORANDUM AND ORDER** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| TIMOTHY J. SULLIVAN, M.D., | ) ) | |
| Defendant. | ) | |

  This is a medical malpractice action arising out of the allegedly negligent treatment and care rendered by defendant Timothy J. Sullivan, M.D., to Lyle Elliott at Thayer County Health Services on November 1, 2002. Dr. Sullivan has filed a motion for summary judgment (filing 15), arguing that the plaintiffs' claim is barred for failure to comply with the notice provisions of Nebraska's Political Subdivisions Tort Claims Act, Neb. Rev. Stat. Ann. §§ 13-901 to 13-926 (LexisNexis 2004). I shall grant the defendant's motion and dismiss this case.

**I.**

  The undisputed material facts[1] are these:

---

[1] The defendant's brief contains a very abbreviated and cursory statement of facts with pinpoint references to materials relied upon to support the alleged facts. (Filing 16, at 1.) (Contrary to NECivR 56.1, the facts are not contained in numbered paragraphs.) In response, the plaintiffs have either admitted or denied each of the

1.      This action is brought in diversity by the Estate of Lyle Elliott, its Special Administrator, and Mr. Elliott's wife and children, all of whom reside in Kansas. Defendant Timothy J. Sullivan, M.D., resides in Nebraska. (Filing 1, Complaint 1-2.)

2.      Plaintiffs' complaint alleges the following facts:

> On November 1, 2002, Lyle Elliott began experiencing chest discomfort and abdominal pain and was seen by Dr. Timothy Sullivan upon arriving at Thayer County Health Services. Dr. Timothy Sullivan performed an examination of Lyle Elliott and did not order an EKG but felt that his heart did need to be evaluated. The cardiac evaluation was scheduled for November 6, 2002. On November 5, 2002, Lyle Elliott was not feeling well and was taken to the Washington Hospital via ambulance where he died shortly upon arrival. An autopsy was performed that showed his cause of death as cardiac arrest.

(Filing 1, Complaint 2 (paragraph numbers omitted).) Plaintiffs also allege that as a result of Dr. Sullivan's negligence, they incurred medical, funeral, and burial bills; damages for Lyle Elliott's "conscious pain, suffering and disability"; and lost wages. (Filing 1, Complaint 2-3.)

3.      The parties do not dispute that Thayer County Health Services is a political subdivision within the meaning of Nebraska's Political Subdivisions Tort

---

facts set forth in the defendant's statement. (Filing 23, at 2.) However, most of the truly material facts, with citations to evidence, are incorporated into the argument section of the parties' briefs and are not disputed by the other party. Accordingly, I have deemed these facts admitted. I have not considered as evidence the exhibits attached to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment (filing 23) because these exhibits have not been filed separately with an index, nor have they been identified and authenticated by affidavit. NECivR 7.1(a)(2).

Claims Act, but they do dispute whether Dr. Sullivan was an employee of the political subdivision or an independent contractor.

4. After a "diligent search of Thayer County's records," the Clerk of Thayer County has determined that no claim has been filed pursuant to the Nebraska Political Subdivision Tort Claims Act by The Estate of Lyle Elliott, by and through its Special Administrator, Mary Elliott, and Mary Elliott, Tia Collins, Larz Elliott, Tamika Elliott, and Kaden Elliott against Timothy J. Sullivan, M.D. (Filing 17, Ex. 1, Aff. Marilynn Free.)

5. During the relevant time period, Dr. Sullivan provided medical services solely from Thayer County Health Services Clinics and Thayer County Hospital.[2] He was compensated for his services by receiving a salary from Thayer County Health Services. Dr. Sullivan's federal and state income tax deductions and Social Security deductions were taken directly out of his salary and were noted on each pay stub Dr. Sullivan received from Thayer County Health Services. Thayer County Health Services paid payroll taxes on Dr. Sullivan's salary. Patients were billed for Dr. Sullivan's services by Thayer County Health Services. All facilities and instrumentalities used by Dr. Sullivan in connection with providing health care services to patients were provided by Thayer County Health Services. (Filing 17, Ex. 2, Aff. Joyce Beck, Thayer County Hospital Administrator; Filing 17, Ex. 3, Aff. Timothy J. Sullivan, M.D.)

6. At the relevant time, Dr. Sullivan and Thayer County Health Services were parties to an "Employment Agreement." The Agreement required Dr. Sullivan, who was designated in the Agreement as "Employee," to "provide such medical

---

[2]The public can access Thayer County Health Services Clinic by using the main entrance to the Thayer County Hospital. (Filing 17, Ex. 3, Aff. Timothy J. Sullivan, M.D.)

services for patients of the medical clinics established by Employer as such times and in such a manner as hereinafter described." The Agreement also required Dr. Sullivan to "engage in medical practice in accordance with the ethical and professional standards of Employer"; to "comply with all policies and standards of Employer governing the practice as a physician including Thayer County Health Services' Medical Staff Bylaws and Rules and Regulations"; to be "subject to the direction of the Board of Trustees of Employer and the officers of Employer in accordance with established policies and procedures"; and to "comply with reasonable standards established by Employer's malpractice carrier to be eligible to be included as a covered employee under Employer's malpractice insurance policy." The Employment Agreement gave Dr. Sullivan sole responsibility for the "quality of medical care rendered" by him and specified that Thayer County Health Services "shall neither have, nor exercise, any control over the professional medical judgment or methods used by Dr. Sullivan." (Filing 17, Ex. 3, Aff. Timothy J. Sullivan, M.D. & Attached Employment Agreement; Filing 17, Ex. 2, Aff. Joyce Beck & Attached Employment Agreement.)

7. The Agreement limited Dr. Sullivan's ability to practice medicine outside of Thayer County Health Services:

> It is anticipated that Employee shall devote substantially Employee's entire time, skill and energy to the delivery of professional medical care on behalf of the Employer, and during the term of this Agreement, Employee will not engage in the delivery of medical care except as an Employee of the Employer unless authorized specifically in writing to do so by the Employer.

(Id.)

8. The Employment Agreement required that Dr. Sullivan provide a minimum of 32 contact hours per week in Thayer County Health Services Clinics and 13 weekends of call coverage per year. Thayer County Health Services was required

under the Agreement to provide Dr. Sullivan with facilities and equipment "necessary for the full range of medical services customarily provided by physicians in the Employee's specialty . . . and for the adequate performance of Employee's duties on behalf of Employer."  (Id.)

9.      The Employment Agreement provided benefits to Dr. Sullivan such as a pension plan with matching contributions paid by Thayer County Health Services, group term life and disability insurance with premiums paid by Thayer County Health Services, a tax-deferred annuity program, deferred compensation program, credit union membership, extended sick-leave accrual, mileage reimbursement for travel, and employer-paid professional membership dues and licensing fees.  Dr. Sullivan was also entitled to paid vacation and holidays and $2,000 per fiscal year for the cost of attending educational meetings.  (Id.)

10.     Under the Agreement, Thayer County Health Services was required to establish billing rates for Dr. Sullivan's services and had the "sole right to bill for and receive any and all fees for" Dr. Sullivan's services.  If any payment for medical services was received by Dr. Sullivan directly, the Agreement required that he "be deemed a billing and collection agent for Employer and shall be liable for prompt remittance of such payments to Employer."  (Id.)

11.     Should Dr. Sullivan and Thayer County Health Services terminate the Employment Agreement, Dr. Sullivan was "not . . . entitled to keep or reproduce . . . records, charts, films, or files related to any patient" in the absence of a patient request.  While the Agreement listed grounds for its termination, it did not state that Dr. Sullivan's services were to be performed for a finite term.  (Id.)

12.     Dr. Sullivan and the administrator of the Thayer County Hospital believed that Dr. Sullivan acted as an employee of Thayer County Health Services.

(Filing 17, Ex. 2, Aff. Joyce Beck ¶ 17(b) & Ex. 3, Aff. Timothy J. Sullivan, M.D. ¶ 18.)

## II.

Neither party disputes that Thayer County Health Services is a political subdivision within the meaning of the Nebraska Political Subdivision Tort Claims Act ("Act").  Nor do the parties dispute that Plaintiffs have failed to file a claim with the relevant Thayer County governing body pursuant to the Act, and the evidence before the court independently establishes the absence of such a claim.  (Filing 17, Ex. 1, Aff. Marilynn Free.)  Therefore, the sole issue is whether the Act's one-year notice provision is applicable to the Plaintiffs' claim against Dr. Sullivan which involves determining whether Dr. Sullivan is an employee of Thayer County Health Services—and therefore subject to the Act—or an independent contractor not subject to the Act's requirements.

"The Tort Claims Act is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." Keller v. Tavarone, 628 N.W.2d 222, 230 (Neb. 2001).  "While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Tort Claims Act."  Jessen v. Malhotra, 665 N.W.2d 586, 590 (Neb. 2003).  Neb. Rev. Stat. Ann. § 13-920(1) (LexisNexis 2004) provides in part:

> No suit shall be commenced against any employee of a political subdivision for money on account of . . . the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued . . . .

Failure to file such notice deprives the political subdivision of the opportunity to evaluate whether to settle the claimant's claim or defend itself in litigation. Jessen, 665 N.W.2d at 591.

Usually, whether a party is an employee or independent contractor is a question of fact. However, when the facts are undisputed and "where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law." A "clear inference" means there is "no dispute as to facts pertaining to the contract and the relationship of the parties involved and only one reasonable inference can be drawn therefrom." Keller, 628 N.W.2d at 228 (medical malpractice action against surgeon who worked at county hospital). The evidence in this case makes the question of the nature of Dr. Sullivan's relationship with Thayer County Health Services one of law because the facts are undisputed and only one reasonable inference can be drawn therefrom. See Hemmerling v. Happy Cab Co., 530 N.W.2d 916, 921 (Neb. 1995) (whether party was employee or independent contractor was question of law when contract indicated who had right of control and examination of true nature of relationship created clear inference that master-servant relationship existed); Delicious Foods v. Millard Warehouse, 507 N.W.2d 631, 637 (Neb. 1993) (describing when characterization of relationship is one of fact or law).

While there is no single, definitive, or conclusive test or factor for determining whether one is an employee or independent contractor, Nebraska courts have stated that the "following factors must be considered":

> (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or one employed supplies the instrumentalities, tools, and the place of

> work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business.

Keller, 628 N.W.2d at 228. "Generally, the right of control is the chief factor distinguishing an employment relationship from that of an independent contractor." Id.

In Keller, the Nebraska Supreme Court affirmed the district court's decision that a surgeon was an employee of a county hospital—as opposed to an independent contractor—despite the facts that the surgeon was engaged in a distinct and skilled occupation that is often performed without supervision and involves the exercise of independent professional medical judgment, factors that generally weigh in favor of finding an independent contractor relationship. Id. at 229. In affirming the district court's finding that the surgeon was an employee of the county hospital, the Nebraska Supreme Court found significant the facts that the surgeon was required to make medical decisions in the best interests of his patients, but within established hospital guidelines; the hospital maintained all medical records, which were property of the hospital; the surgeon was not permitted to engage in the practice of medicine in any other form without the hospital's permission; the surgeon considered himself bound to the hospital with no other employment; the surgeon listed the hospital as his employer on an insurance application; the hospital controlled by agreement where the surgeon would provide medical services; the hospital provided all the facilities and supplies for the surgeon's employment and performed all the billing and administrative functions; the surgeon was engaged to work for an indefinite period of time for a fixed salary; the parties believed they had created a master-servant relationship; and the work performed by the surgeon was part of the regular business of the hospital. Id. at 228-29.

Like the surgeon in Keller, Dr. Sullivan exercised his own professional medical judgment in caring for patients at Thayer County Health Services, but his Employment Agreement with Thayer County Health Services required that he practice medicine in specified Thayer County entities and within the ethical and professional policies, procedures, and standards of Thayer County Health Services. Further, the Agreement required that Dr. Sullivan "devote substantially [his] entire time, skill and energy to the delivery of professional medical care on behalf of [Thayer County Health Services]" and prohibited Dr. Sullivan from "engag[ing] in the delivery of medical care except as an Employee of the Employer [Thayer County Health Services] unless authorized specifically in writing." In exchange for Dr. Sullivan's work for Thayer County Health Services, it paid him a salary and provided him retirement and insurance benefits, sick leave, paid vacation and holidays, and reimbursement for professional and educational activities and meetings. The Agreement also provided that Thayer County Health Services supply facilities and equipment necessary for Dr. Sullivan to perform medical services "on behalf of Employer." It is also clear that Dr. Sullivan's work was part of the regular business of Thayer County Health Services.

Thayer County Health Services deducted taxes and Social Security contributions from Dr. Sullivan's salary, paid payroll taxes on his salary, established billing rates for Dr. Sullivan's services, and billed patients directly for Dr. Sullivan's services. If Dr. Sullivan happened to receive payment directly for medical services performed at Thayer County Health Services, the Employment Agreement characterized him as a "billing and collection agent" for Thayer County Health Services and made him liable for "prompt remittance of such payments" to Thayer County Health Services.

The Employment Agreement in this case dictated the minimum amount of contact hours and call coverage Dr. Sullivan was required to perform; made it clear that Thayer County Health Services owned and controlled patient records; and did not

limit the performance of Dr. Sullivan's services to a finite term. Finally, both Dr. Sullivan and the administrator of the Thayer County Hospital believe that Dr. Sullivan was an "employee" of Thayer County Health Services.

With the exception of Dr. Sullivan's exercise of independent professional medical judgment in individual cases, the Employment Agreement between Dr. Sullivan and Thayer County Health Services and my examination of the true nature of the relationship between Dr. Sullivan and Thayer County Health Services make it clear that the latter had the right of control over Dr. Sullivan's performance of medical services at Thayer County Health Services Clinics and Thayer County Hospital. Specifically, Thayer County Health Services controlled the facilities and equipment Dr. Sullivan could use; patient records; the amount and manner in which patients were billed for Dr. Sullivan's services; the amount of salary and nature of benefits Dr. Sullivan received in exchange for his services; where Dr. Sullivan could provide medical services; and many of the standards, policies, procedures, bylaws, rules, and regulations to which Dr. Sullivan was bound to adhere in performing medical services.

Under this undisputed set of facts, the only reasonable inference to be drawn is that defendant Timothy J. Sullivan, M.D., was at the relevant time an employee of Thayer County Health Services, a political subdivision. Because Nebraska's Political Subdivisions Tort Claims Act, Neb. Rev. Stat. Ann. §§ 13-901 to 13-926, is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees, the filing or presentment of Plaintiffs' claim to the appropriate political subdivision was a condition precedent to commencement of this suit. Because the plaintiffs failed to comply with this notice requirement before filing this lawsuit, Defendant's motion for summary judgment must be granted and this case dismissed.

IT IS ORDERED:

1. Defendant's motion for summary judgment (filing 15) is granted;

2. By separate document, judgment shall be entered in favor of the defendant and against the plaintiffs, providing that the plaintiffs shall take nothing and the complaint is dismissed with prejudice.

DATED this 5th day of May, 2005.

> BY THE COURT:
> s/Richard G. Kopf
> United States District Judge